# CHARLESTON.

HERRING v. BENDER *et al.*

Decided December 15, 1900.

1. DISCONTINUANCE—*Lis Pendens.*

> Where there is a discontinuance of a case by a chasm in the proceedings at rules, and it has never been set for hearing so as to be on the hearing docket, the defendant cannot sustain a motion under Code, chapter 76, section 6, to enforce the execution of a release of a notice of *lis pendens*, recorded in such suit, in advance of a judgment to declare such discontinuance and dismissing the suit.  (p. 499).

· 2. CHASM—*Dismissal.*

> Where there is a discontinuance of a case by reason of a gap or chasm in proper proceedings at rules, and the case has not reached the trial docket, and no order of discontinuance having been entered at rules, the defendant may have action of the court declaring the fact of discontinuance, and dismissing the case, though the chasm operating as such discontinuance occurred prior to the last vacation.  (p. 501).

Error to Circuit Court, Berkeley County.

Bill by I. L. Bender and Jennie S. Bristor against Henry M. Herring and others. From an order refusing to dismiss the suit, Herring brings error.

*Affirmed.*

FAULKNER, WALKER & WOODS and FLICK, WESTENHAVER & NOLL, for plaintiff in error.

M. T. INGLES, for defendants in error.

BRANNON, JUDGE:

I. L. Bender, executor, and Jennie S. Bristor, executrix, of J. H. Bristor, brought a chancery suit in the circuit court of Berkeley County against Henry M. Herring and others, to subject land to the payment of a debt. The process was returnable to December rules, 1895, and was executed on all the defendants except Cox, and against him at December rules an order of publication was awarded, and the case was continued on the rule docket for want of bill. It was again continued at January

rules, 1896. At February rules, 1896, the' bill was filed and a decree *nisi* entered. That is the last appearance of record of the case. There never was any other entry at rules—no continuance, order taking the bill for confessed or setting the case for hearing. The defendant Herring claiming that the case had ceased to exist by reason of a discontinuance therein, gave the plaintiffs in that suit a notice dated 20th November, 1899, that he would move said circuit court, at its January term, 1900, to direct the clerk of the county court of Berkeley County to execute a release of the *lis pendens* which had been recorded in said suit on the 25th of November, 1895, the plaintiffs having refused to execute such release. The notice specified that such motion would be based on such discontinuance of the chancery suit. Upon the hearing of this motion the circuit court denied the relief which it sought, and dismissed the motion, and Herring brings the case here by writ of error.

This is a case of novelty. Conceding that there occurred a discontinuance of the chancery cause, the question occurred to me whether the motion to compel such release of the notice or memorandum of *lis pendens* in advance of a judicial ascertainment, by an order in the chancery case, of the existence of a discontinuance in it could be sustained. We have not the aid of any brief for the defendants in error. From the brief on the other side, I suppose the judge of the circuit court was moved by the same question. I cannot see that Herring by the present collateral proceeding, can compel such release in advance of and without some action in the chancery suit itself declaring the existence of a discontinuance working the end of the chancery suit and extinguishing it, by decree therein dismissing it out of the court. Here is a suit at one time certainly lawfully pending in the court. A *lis pendens* was properly recorded. The defendant claims that it is no longer a pending suit; the other side claims that it is, and may be lawfully further prosecuted. Who shall decide this question? The court, of course. But in what proceeding? I answer in the very case in which the discontinuance exists, and not in another separate and collateral case. If judgment is given upon the motion for the execution of a release, it would not end the chancery suit. If the plaintiffs in the chancery suit go on with it, could Herring plead in bar of it the judgment upon this motion granting the relief? I doubt it; it would seem to be irregular. It seems to me that the defendant

in the chancery suit should be required, by some step taken in it, to have an order in it giving a quietus to that chancery suit. It is not like a payment, or other act in the country, giving right to a release. The right to such release depends upon a judicial proceeding, that is, whether, by reason of a chasm in the record of the case, a judicial proceeding, the law pronounces the extinction of the case by reason of the discontinuance. If the plaintiffs in the chancery suit were to go on with it, the defendants could make that discontinuance effective in their favor by a motion to dismiss it; but suppose the plaintiffs should let the case lie dormant, hanging over the defendant, there must be some way in which the defendant can end the matter by making the discontinuance effectual. In this case Herring could move the court to declare that this discontinuance existed and to dismiss the bill and strike the cause from the rule docket. I think that in this case the cause of discontinuance appears of record, or, at any rate, the rule docket could be presented to show the gap or chasm in procedure creating the discontinuance. In a common law case if the matter establishing the discontinuance is *dehors* the record, a plea of *puis darrein continuance* would be necessary to show the extraneous facts working the discontinuance; but when they are already manifested by the record, a motion would seem to be proper and sufficient. *Pierce* v. *Bank,* 1 Swan 265; *Armstrong* v. *Harrison,* 1 Head 379; 1 Chit. Pl. 689; *Crockett* v. *Beaty,* 7 Humph. 66; *Jewell* v. *Blankenship,* 10 Yerg. 439. I should regard it likewise in- chancery. That a defendant has right to avail himself of a non-suit by a motion to discontinue is clear. 6 Ency. Pl. & Prac. 877. An order of the court ascertaining and declaring the fact of discontinuance and dismissing the case out of court would be a judicial determination of the suit. Then, beyond question, under- the Code, chap-. ter 76, section 6, a motion for the release of the *lis pendens* would be maintainable. Perhaps another process would be a rule upon the plaintiffs to speed the cause and bring it on for hearing. But some would say this would be a recognition of the continued life of the cause; still, I should say that if the plaintiff, in answer to the rule, should mature his cause, then the defendant could avail himself of the discontinuance without being estopped by his rule to speed; but I would prefer the other procedure, as one giving the defendant a weapon of his own. It will, however, be said that when facts exist operating as a dis-

continuance, that discontinuance, of its own force, puts the case out of court, (Steph. on Pl. 60), and that there need be no order or judgment to put the case out of court. I do not think that there is much force in this. I do not think it would pre-. clude the defendant from having an express dismissal founded on the fact of the discontinuance, in order to make definite the final determination of the suit.

We must not think that because the case is still at rules, or its last appearance was on the rule docket, and that it never reached the trial docket, that it is beyond the control of the court. When a summons isues a suit is in the court. Though it be on the rule docket, it is nevertheless in that court as a pending cause. A suit is as much in the court though at rules as if on the trial docket. There is a docket of cases at rules, and there is a docket of cases matured for trial; but all are in the court, and the court has lawful powers over all of them. We must not conclude that because the Code in chapter 125, section 60, says: "The court shall have control over all proceedings in the office during the preceding vacation. It may reinstate any cause discontinued during such vacation, set aside any of the proceedings or correct any mistake therein, and make such order concerning the same as may be just," that the court is limited in all its action upon cases pending at rules to the correction or reversal of the clerk's action during the preceding vacation; for such is not the object of that section. I think the object of the section was to limit the powers of the court in term over affirmative action of the clerk at rules to such action, affirmative, positive, action, as was taken during the preceding vacation, and not allow the court to go further back, as it could do but for that section. It was designed to prohibit the court from reinstating any case discontinued prior to the preceding vacation, or its power to set aside or correct any mistake made prior to such vacation. It is aimed at actual proceedings or actions of the clerk, limiting the corrective action of the court thereon to the last vacation. Surely it was not designed to prevent the court, in a case like the present, where a party brings a suit and allows it to slumber in silence, the clerk entering no order of discontinuance, from giving the other party the right to a positive declaration of discontinuance and judgment dismissing the cause.

The defendant not having procured a judgment judicially ascertaining such discontinuance and judicially ending the chan-

cery cause, instituted his motion prematurely. We must, therefore, affirm the judgment, without prejudice to Herring to enforce such release upon another motion.

*Affirmed.*